UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GUILIO MESADIEU,

*Plaintiff*,

v.

CITY OF ELIZABETH, *et al.*,

*Defendants*.

Civil Action No. 17-3252

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiff seeks to bring this action *in forma pauperis* pursuant to 28 U.S.C. § 1915. D.E. 1. For the reasons discussed below, the Court **GRANTS** Plaintiff's application to proceed *in forma pauperis* but Counts I, II, III (as to alleged searches and the 2002 arrest only), IV, V, VI, VII, VIII, X, XI (as to the 2002 arrest only), and XII of the Complaint are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failing to state a claim upon which relief can be granted. Counts III and IX remain as to Plaintiff's 2001 and 2006 arrests.

Under Section 1915, the Court may excuse a litigant from prepayment of fees when the litigant "establish[es] that he is unable to pay the costs of his suit." *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Plaintiff sufficiently establishes his inability to pay, and the Court grants his application to proceed *in forma pauperis* without prepayment of fees and costs.

However, when allowing a plaintiff to proceed *in forma pauperis*, the Court must review the complaint and dismiss the action if it determines that the action is frivolous, malicious, fails to

state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2). When considering dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted, the Court must apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 Fed. App'x 120, 122 (3d Cir. 2012). To state a claim that survives a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

## I. **Background**

This case appears to concern allegations of racial profiling, among others. Complaint ("Compl.") (D.E. 1) at 3. Plaintiff alleges that, "[s]everal times throughout the course of his life," Plaintiff, an African-American man, "was arrested by the defendants[¹] and charged with crimes

---

[1] Plaintiff brings this case against the following entities: City of Elizabeth, Elizabeth Police Department, and Union County. Because "[a] municipality and its police department are a single entity for the purposes of § 1983 liability," the claims against the Elizabeth Police Department must be dismissed. *McCann v. Winslow Twp.*, No. 07-0052, 2007 WL 3349324, at *1 (D.N.J. Nov. 7, 2007) (citing *Boneberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997)) (dismissing claims against police department when plaintiffs also asserted claims against the municipality). Thus, the City of Elizabeth and Union County together will be referred to as the "Entity Defendants."

based on the color of his skin." *Id.* at 10. On January 10, 2001, Plaintiff alleges that as he was leaving the store, he was "stopped and frisked" by Defendant Gunter and his partner "for no reason." *Id.* at 10-11. He alleges that Gunter proceeded to go into the backyard and returned "with some drugs he claimed [were] stashed [] there." Plaintiff was subsequently charged with possession of drugs. *Id.* at 11. Plaintiff then describes an incident in May of 2002 when "[t]he cops were in [his] building doing a random raid" and although Plaintiff alleges he had no drugs or money at the time, "Defendant Micros . . . charged [him] with possession with the intent to distribute." *Id.*

Then, in November of 2006, Plaintiff alleges that he ran into an "associate" and received a ride from him. *Id.* During the drive, the car was stopped by the police, who allegedly "snatched [Plaintiff and his associate] out of the vehicle and began searching [the car and the men]." *Id.* Plaintiff alleges the police searched them without their "consent or a warrant." *Id.* Plaintiff also alleges that, despite not having drugs on him, he was arrested for possession with the intent to distribute. *Id.* Plaintiff states that he "filed numerous complaints against these officers, with [] internal affairs, due to their constant harassment and filing of false charges," but they were never investigated. *Id.*

While in prison,[2] Plaintiff was informed of a report published by the American Civil Liberties Union (the "Report"), which "indicated severe disparities in the number of black/white arrests" in four cities, including Elizabeth. *Id.* at 12. Plaintiff alleges that the Report "proves that

---

Plaintiff also brings this case against the following individuals: James Cosgrove (Chief of Police for Elizabeth Police Department), Officer Mikros (Elizabeth Police Officer), TY Kelly (Elizabeth Police Officer), Theodore Romankow (Prosecutor), Christopher Porrino (Attorney General), and Officer Gunter (Elizabeth Police Officer) (the "Individual Defendants," and collectively, with the Entity Defendants, "Defendants").

[2] Plaintiff does not indicate the reason he was in prison or what his sentence was.

during the relevant time period[,] the Elizabeth police department had a well-established policy of selectively enforcing the law against racial minorities" and that Defendants "agreed on a course of conduct that was designed to discriminate against racial minorities for the purpose of depriving them equal protection of the laws." *Id.*

Plaintiff then describes specific instances of misconduct by the Individual Defendants. For instance, Plaintiff alleges that "Defendant Kelly assisted [D]efendant Micros in arresting Plaintiff and falsifying police reports to cover up their misconduct." *Id.* Also, Defendant Cosgrove, according to Plaintiff, as the supervisor "failed to act to curb [the officers'] behavior or otherwise correct the constitutional violations." *Id.* at 13. Cosgrove also was allegedly aware of "the selective policing policy" and "code of silence" in the department, "whereby officers would not report misconduct of other officers and failed to take the necessary steps to break the 'code of silence.'" *Id.* Additionally, Plaintiff states that Cosgrove "failed to inform the prosecutor about exculpatory information," thus preventing Plaintiff from being able to "mount an effective defense against the state's accusations" and getting his charges dismissed. *Id.*[3]

Plaintiff states that "[t]he full extent of these racial profiling practices" was crucial to the evaluation of plaintiff's claims, and he is therefore "entitled to a vacation of his convictions." *Id.* at 14. In terms of Defendants City of Elizabeth, Union County, Porrino and Romankow, Plaintiff alleges they had supervisory roles and "permitted, encouraged, tolerated and knowingly acquiesced to an official pattern, practice or custom of police officers." *Id.* at 15. By adopting policies and failing "to take proper action to protect the citizens of Elizabeth," Plaintiff alleges that these Defendants are "directly liable for Plaintiff's damages." *Id.* In particular, Plaintiff alleges

---

[3] Plaintiff also alleges, in conclusory fashion, that Defendants Romankow and Porrino suppressed evidence of racial profiling. *Id.*

4

the following policies and customs: inadequate training, supervision, discipline, screening and hiring. *Id.* at 16. In other words, Plaintiff alleges that these Defendants created "an atmosphere where [] unconstitutional conduct is tolerated, ratified and condoned, in deliberate indifference and reckless disregard to the welfare of racial minorities, including Plaintiff." *Id.* at 17.

Plaintiff alleges the following causes of action: (1) racial profiling in violation of the Fourteenth Amendment; (2) racial discrimination in violation of the Equal Protection Clause; (3) illegal search and seizure in violation of the Fourth and Fourteenth Amendments; (4) violation of 42 U.S.C. § 1985(3) and 42 U.S.C. § 1983 conspiracy; (5) preventing access to the courts, post-conviction relief and civil remedies in violation of the First and Fourteenth Amendments; (6) 42 U.S.C. 1986 conspiracy; (7) failure to adequately train and/or supervise; (8) "arresting and/or detaining Plaintiff based on race" in violation of "the tort of assault under the law of New Jersey;"[4] (9) wrongful imprisonment; (10) racial discrimination pursuant to New Jersey law; (11) intentional infliction of emotional distress; and (12) negligence for failure to adequately train and/or supervise employees. *Id.* at 19-21.[5]

Due to these alleged violations, Plaintiff requests compensatory and punitive damages, as well as an injunction stating that "Plaintiff was subjected to racial profiling," prohibiting defendants "from having any further contact with Plaintiff," and ordering Defendants "to disclose the full extent of their racial profiling practices to the Plaintiff and public at large." *Id.* at 22-23.[6]

---

[4] The Court is unclear as to what Plaintiff is claiming regarding the arrest, but construes this count as Plaintiff alleging common law assault when he was arrested based on his race pursuant to.

[5] Counts I, II, III, VIII, VIIII, and X are brought against Defendants Mikros, Kelly and Gunter only. Counts IV, VI and XI are brought against all Defendants. Counts VII and XII are brought against Defendants Cosgrove, Romankow, Porrino and the Entity Defendants.

[6] Plaintiff fails to set forth any of the requirements for injunctive relief. *See Parkell v. Senato*, 639 F. App'x 115, 117 (3d Cir. 2016) (requiring the party moving for an injunction to establish: "(1) a

5

## II. Analysis

At the outset, the Court notes that it will not address potential defenses to the claims raised herein. In particular, it appears that Plaintiff's allegations concern incidents whose statute of limitations has run. *See, e.g., Rolax v. Whitman*, 175 F. Supp. 2d 720 (D.N.J. 2001), *aff'd*, 53 F. App'x 635 (3d Cir. 2002) ("Actions filed under § 1983 in New Jersey are subject to two-year personal injury statute of limitations."); Compl. at 11 (listing allegations that occurred in 2001, 2002 and 2006). The Court will not address the statute of limitations or any other defenses at this time; Defendants may raise them at the motion to dismiss stage if they so choose.

Section 1983 – Individual liability (Counts I, II, III, V, and X)[7]

Claims of constitutional violations must be brought pursuant to 42 U.S.C. § 1983. *See Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). In order to state claim under Section 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

Plaintiff alleges violations of his federal constitutional rights, including his First, Fourth and Fourteenth Amendment rights against various state and municipal employees, in their

---

likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.")

[7] The Court construes Plaintiff's Count X, racial discrimination under New Jersey law, as being brought pursuant to the New Jersey Civil Rights Act ("NJCRA"). *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 744 (D.N.J. 2016), *on reconsideration in part*, No. 12-4165, 2016 WL 3638108 (D.N.J. July 7, 2016) (construing *pro se* plaintiff's claims under the New Jersey constitution as claims under the NJCRA). To the extent Plaintiff's NJCRA claims mirror his Section 1983 claims, the NJCRA claims are addressed in tandem with his federal causes of action. *See Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) ("This district has repeatedly interpreted [the] NJCRA analogously to § 1983.").

6

individual and official capacities.[8] For the purposes of this screening Opinion, the Court will assume that Plaintiff has adequately alleged that Defendants are state actors. *See Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) ("[A]cts of a state or local employee in her official capacity will generally be found to have occurred under color of state law."). Thus, the Court will address the substance of each alleged constitutional violation.

Racial Profiling (Count I)

Plaintiff brings Count I against Defendants Mikros, Kelly and Gunter, alleging that they "racially profil[ed] Plaintiff, a racial minority," which "constituted selective enforcement of the law in violation of the Fourteenth [Amendment]." Compl. at 19.

"A claim for racial profiling is typically advanced under two theories: a claim for "selective enforcement . . . or a claim for an equal protection violation." *Mitchell v. Twp. of Pemberton*, No. 09-810, 2010 WL 2540466, at *5 (D.N.J. June 17, 2010). Under either of these theories, the mere use of the conclusory term "racial profiling" in a complaint is not sufficient to demonstrate that such a policy, in fact, existed. *See id.* ("Simply stating that [racial profiling] exists, or that because the officers stopped [p]laintiff based on his race they must have been doing so pursuant to a racial profiling policy or custom, is not sufficient to meet the proper federal court pleading standards."). Since Plaintiff only generally alleges racial profiling, and gives no additional factual support besides his own arrests and the Report (which he does not attach and does not appear relevant to Plaintiff's particular arrests), he has not plausibly pled this cause of action. Therefore, Count I is dismissed without prejudice.

---

[8] Plaintiff brings some of his constitutional claims against both the Individual Defendants and the Entity Defendants. Since local governments may only be held liable under Section 1983 consistent with the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the liability of the Entity Defendants will be discussed in the "*Monell* Liability" section.

7

Fourteenth Amendment – Equal Protection (Count II)

Plaintiff also alleges that Defendants Mikros, Kelly and Gunter discriminated against Plaintiff "based on considerations of race," which "denied him equal protection of the laws" in violation of the Equal Protection Clause. Compl. at 19. The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. To prevail on an Equal Protection claim, a plaintiff "must present evidence that s/he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (quoting *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)).

Plaintiff alleges that he was discriminated against because of his race. However, this is a conclusory statement for which Plaintiff provides no supporting factual allegations. Plaintiff does not allege that Defendants treated similarly situated, non African-Americans differently. In fact, his only support for African-Americans being treated differently from non-African-Americans is the Report, which he does not cite to directly and appears to have no bearing on Plaintiff's case. Thus, Plaintiff fails to state a claim for a violation of the Equal Protection Clause and Count II is dismissed without prejudice.

Fourth Amendment (Counts III and IX[9])

---

[9] The Court construes Plaintiff's Count IX for "wrongful imprisonment" to be a claim for false imprisonment under New Jersey law. "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384 (2007); *see also Newman v. Barrett Twp.*, No. 15-00376, 2015 WL 7755672, at *3 (M.D. Pa. Dec. 2, 2015) ("False arrest and false imprisonment are essentially the same claim."). Additionally, the elements for false imprisonment under New Jersey and federal law are the same. *Geissler v. City of Atl. City*, 198 F. Supp. 3d 389, 397 (D.N.J. 2016). Therefore, the same analysis applies to Count IX and the false arrest claims in Count III.

8

Next, Plaintiff states that his "arrest based on race" and Defendants Mikros, Kelly and Gunter's search of him each constituted an illegal search and seizure in violation of the Fourth Amendment. Compl. at 19. The Court construes these claims as being for false arrest and unreasonable search, respectively.

"The Fourth Amendment, which protects persons from 'unreasonable searches and seizures' prohibits false arrest, false imprisonment, illegal search and seizure, and the use of excessive force." *Roman v. City of Newark*, No. 16-1110, 2017 WL 436251, at *3 (D.N.J. Jan. 31, 2017) (quoting U.S. Const. amend. IV). To state a claim for false arrest, a plaintiff must allege "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *Watson v. Doe*, No. 04-962, 2005 WL 1116239, at *3 (D.N.J. May 10, 2005). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992). "[T]he test for an arrest without probable cause is an objective one, based on 'the facts available to the officers at the moment of arrest.'" *Janowski v. City of N. Wildwood*, No. 16-4464, 2017 WL 1821078, at *6 (D.N.J. May 5, 2017) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

Plaintiff states that "throughout the course of his life," he "was arrested by the Defendants and charged with crimes based on the color of his skin." Compl. at 10. Plaintiff describes three specific instances of arrest. The first arrest occurred on January 10, 2001. Plaintiff alleges that, while he was walking home from the store, he was "stopped and frisked" by Defendants Gunter and "his partner." *Id.* Despite the officers not finding drugs, Plaintiff contends "Gunter walk[ed] into a backyard and [came] back with some drugs he claimed [were] stashed back there." *Id.* at

9

10-11. Plaintiff alleges Defendants arrested him and charged him with the possession of the drugs that did not belong to him. *Id.* at 11.

The next arrest occurred on May 23, 2002, while Plaintiff was "in the process of leaving [his] building." *Id.* He alleges that he "ran into a group of cops who arrested [him] for an old warrant." *Id.* Plaintiff states that the "cops were in [his] building doing a random raid," and that he was arrested without the presence of drugs, money or buyers, and charged with possession with the intent to distribute. *Id.*

Lastly, on November 29, 2006, Plaintiff alleges that he was in a friend's car when they were pulled over by the police. *Id.* According to Plaintiff, the officers did not have consent or a warrant to search, but nonetheless searched the vehicle and Plaintiff, which resulted in an arrest even though Plaintiff did not have any drugs on him. *Id.*

Taking Plaintiff's allegations as true, Defendants did not have probable cause to arrest Plaintiff in 2001 or 2006, but did have probable cause to arrest Plaintiff pursuant to a warrant in 2002. In 2001 and 2006, respectively, Plaintiff alleges he did not have any drugs on his person and that the narcotics for which he was charged were not his. Taking that as true, the officers did not have probable cause to arrest Plaintiff at those times. Therefore Counts III and IX remain as to the 2001 and 2006 arrests.[10]

The Fourth Amendment also protects against unreasonable searches. U.S. Const. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances

---

[10] This decision in no way prevents Defendants from arguing that they did have probable cause for the arrests on a motion to dismiss. Defendants may also raise any additional arguments, such as statute of limitations, that apply to this claim. Finally, this Opinion does not prevent Defendants from filing a motion to dismiss for failing to plausibly plead a claim. The Court is conducting a screening function without prejudice to the rights of Defendants to defend the matter as they see fit.

surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1988) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 619 (quotation marks and internal citation omitted).

Here, Plaintiff alleges two unconstitutional searches: first, on January 10, 2001, when he was "stopped and frisked" on his way home from the store, and second, in 2006, when the officers searched his friend's car and Plaintiff. Pursuant to the Fourth Amendment, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). This investigatory stop is known as a "stop and frisk," and is an exception to the general rule that the Fourth Amendment requires a warrant based on probable cause. *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006). Thus, a stop and frisk does not require probable cause, but instead a "reasonable suspicion that criminal activity is afoot." *Illinois*, 528 U.S. at 123.

As to Plaintiff's first alleged "search," he does not provide any details except that the officers performed an "unwarranted frisk that did not lead to the discovery of any contraband." Compl. at 10. Whether the stop and frisk was "unwarranted" is a legal conclusion, for which Plaintiff provides no supporting factual allegations. Therefore Count III is dismissed as to the 2001 search.

Additionally, Fourth Amendment rights may not be vicariously asserted. *See Alderman v. United States*, 394 U.S. 165, 174 (1969). Therefore, since Plaintiff asserts no ownership over the vehicle in question, he has no Fourth Amendment rights as to the search of the vehicle. *See U. S. ex rel. Mann v. Mazurkiewicz*, 316 F. Supp. 1041, 1044 (E.D. Pa. 1970). As to the search of his

11

person, Plaintiff states that the officers did not have consent or a warrant to search Plaintiff. However, those are only two exceptions to the warrant requirement. Another exception, for example, occurs when the search is conducted "incident to arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest."). Plaintiff states that he was both searched and arrested. Plaintiff does not provide enough detail or factual support for this Court to evaluate whether the search was incident to a lawful arrest. Therefore, as pled, Count III is dismissed at to the 2006 searches of Plaintiff and the motor vehicle.

First Amendment (Count V)

Plaintiff's final Section 1983 claim is brought pursuant to the First Amendment. Plaintiff alleges that Defendants violated his First Amendment rights by "withhold[ing] exculpatory evidence of their racially motivated practices from the state, depriv[ing] Plaintiff the right to present an adequate defense . . . and "depriv[ing] Plaintiff his right to seek post-conviction relief and civil remedies . . . in violation of the right to access the courts." Compl. at 20.

"It is well-established that there is a constitutional right of access to the courts." *Alston v. Parker*, No. 95-6158, 2007 WL 1349303, at *6 (D.N.J. May 2, 2007) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). This right derives from the First Amendment's right to petition as well as the due process clauses of the Fifth and Fourteenth Amendments, and it requires that "'adequate, effective, and meaningful' access must be provided [to] inmates who wish to challenge their criminal charge, conviction, or conditions of confinement." *Guido v. U.S. Marshals*, No. 08-1096, 2008 WL 1902742, at *6 (D.N.J. Apr. 28, 2008) (quoting *Bounds*, 430 U.S. at 822). The touchstone of this right is "meaningful access to the courts." *Id.* A plaintiff alleging a violation of this right must show: "(1) he suffered an actual injury—that is, that he lost a chance to pursue

12

a nonfrivolous or arguable underlying claim; and (2) he has no other remedy that may be awarded as recompense for the lost claim other than in the present denial-of-access suit." *Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 142 (3d Cir. 2016) (internal quotation marks omitted).

Here, Plaintiff fails to plead either of the elements required for this claim. He does not demonstrate actual injury; in fact, he does not give any details as to how the supposed exculpatory evidence would have aided in his defense. To the extent Plaintiff is asserting a violation of due process, he fails to state so. He also does not allege that there is no alternate remedy than the present claim. Therefore, Count V is dismissed.[11]

Section 1983 – Monel Liability (Count VII)

Plaintiff also alleges constitutional claims against the Entity Defendants, pleading that their failure to adequately train and supervise their subordinates "constituted deliberate indifference and directly and proximately caused the violations of plaintiff's rights described herein." Compl. at 21.

A municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 690-91). Rather, to hold a municipality liable, a plaintiff must demonstrate that the violation of rights was caused by a municipal policy or custom. *Id.* To sufficiently state a claim based on a municipal policy or custom, a plaintiff must identify a policy or custom that "violates the Constitution or . . . while not unconstitutional itself, is the moving force behind the constitutional tort of one of its employees." *Id.* (quoting *Colburn v. Upper Darby*

---

[11] To the extent that the allegations in Count V forms the basis of Plaintiff's conspiracy claims (Counts IV and VI), those Counts are also dismissed.

13

*Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). Moreover, if a plaintiff relies on a policy or custom that does not violate federal law on its face, "causation can only be established by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequence.'" *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). The policy or custom must be "fairly said to represent official policy." *B.S. v. Somerset Cty.*, 704 F.3d 250, 274 (3d Cir. 2013).

Plaintiff fails to plausibly plead *Monel* liability. Instead, Plaintiff states, in a conclusory fashion, that Defendants demonstrated a "deliberate indifference" to "the welfare of racial minorities, including Plaintiff." Compl. at 17. Presumably, Plaintiff is referring to the alleged racial profiling and "code of silence" by the supervisors. However, as stated, "racial profiling" is a legal term of art, not a factual allegation. *Mitchell*, 2010 WL 2540466, at *5. Moreover, while Plaintiff alleges a "code of silence," he provides no plausible support for the fact that the racial profiling was an official policy or custom in the police department or municipality. Additionally, to the extent Plaintiff's claim is based on inadequate training, supervision, discipline, screening and hiring, Plaintiff provides no facts as to how these "policies" violated the Constitution. Moreover, he makes such allegations in conclusory fashion without plausible factual support.

Therefore, Count VII, as well as any other constitutional allegations brought against the Entity Defendants, is dismissed.

Conspiracy (1985 and 1986) (Counts IV and VI)

Plaintiff also asserts claims alleging a civil conspiracy pursuant to 42 U.S.C. Sections 1985 and 1986. FAC ¶¶ 80-84. To sufficiently plead a Section 1985(3) claim, a plaintiff must establish:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the

14

> conspiracy; and (4) injury to a plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen.

*McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014). Section 1985(3) actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). In addition, a claim for conspiracy "must contain supportive factual allegations." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009). Mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002). Finally, "[a] plaintiff must establish a valid [Section] 1985 claim in order to state a claim under [Section] 1986." *Carrington v. City of Jersey City*, No. 06-5367, 2008 WL 2061147, at *7 (D.N.J. May 12, 2008).

Here, to the extent that Plaintiff pleads a conspiracy claim, he fails to support it with any factual allegations. The Complaint merely states in conclusory fashion that Defendants conspired to "racially profile and discriminate against Plaintiff based on race." Compl. at 19. Further, Plaintiff alleges that Defendants "failed to prevent the conspiracy" in violation of Section 1986. *Id.* at 20. Plaintiff does not address any of the elements of a Section 1985, much less with sufficient factual plausibility. Therefore, Plaintiff's Section 1985 conspiracy claim is dismissed without prejudice. Because Plaintiff fails to adequately plead a claim for a Section 1985 conspiracy, any claim under Section 1986 necessarily fails. *See Carrington*, 2008 WL 2061147, at *7.

<u>Assault (Count VIII)</u>

"A person is subject to liability for the common law tort of assault if: (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such immediate apprehension." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009).

Plaintiff fails to plead the elements of assault. Plaintiff states that Defendants Mikros, Kelly and Gunter committed assault by "detaining and/or arresting Plaintiff based on race." Compl. at 21. However, he does not plead any facts showing that "harmful or offensive contact" was used against him in order to make his arrest. Even if the arrest did involve "harmful or offensive contact," Plaintiff does not allege that he was put in "immediate apprehension," as is required to plead assault. Count VIII is dismissed.

Intentional Infliction of Emotional Distress (Count XI)

To establish a claim for intentional infliction of emotional distress, a plaintiff must plead four elements: (1) defendants acted intentionally or recklessly; (2) defendant's conduct was so outrageous to go beyond all bounds of decency and be utterly intolerable in a civilized community; (3) proximate cause; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it. *Shuman v. Raritan Twp.*, No. 14-3658, 2016 WL 7013465, at *26 (D.N.J. Nov. 30, 2016) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 532 (D.N.J. 2008)).

Here, Plaintiff alleges that Defendants "purposely subject[ed] Plaintiff to severe emotional distress." Compl. at 21. This allegation is entirely conclusory, and fails to plead any of the requisite elements for the tort of intentional infliction of emotional distress. Count XI is dismissed without prejudice.

Negligence (Count XII)

Lastly, Plaintiff alleges that "[t]he actions of defendants City of Elizabeth, Union County, Cosgrove, Romankow and Porrino, in failing to adequately train and/or supervise their subordinates constituted the tort of negligence under the law of New Jersey." Compl. at 21.

In New Jersey, to sustain a claim of negligent training, "a plaintiff must show that (1) the defendant owed a duty of care to the plaintiff to properly train its employees, (2) defendant

breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 768 (D.N.J. 2016), *on reconsideration in part*, No. 12-4165, 2016 WL 3638108 (D.N.J. July 7, 2016). Separately, the "claim of negligent supervision requires showing that (1) the employer must have known or had reason to know that the employee exhibited dangerous characteristics; (2) there must be a reasonable foreseeability of harm to others; and (3) the negligent supervision must be the proximate cause of the alleged injury." *Id.* at 769 (quoting *Cordial v. Atl. City*, No. 11-1457, 2014 WL 1095584, at *11 (D.N.J. Mar. 19, 2014)).

Once again, Plaintiff merely make conclusory allegations. Plaintiff does not address the elements of either negligent training or negligent supervision under New Jersey law. Therefore, Count XII is dismissed without prejudice.[12]

Conclusion

Plaintiff's Complaint is dismissed without prejudice as to Counts I, II, III (as to the searches and 2002 arrest only), IV, V, VI, VII, VIII, X, XI (as to the 2002 arrest only), and XII. The Court also denies Plaintiff's request for injunctive relief. Counts III and IX remain as to Plaintiff's 2001 and 2006 arrests. Plaintiff has thirty (30) days to file an amended complaint[13] that cures the

---

[12] When dismissing a case brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, which affords a plaintiff with leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). At this point, the Court cannot conclude that any of Plaintiff's claims are futile. Therefore, the Court dismisses each of Plaintiff's claims without prejudice.

[13] If Plaintiff does file an amended complaint which the Court finds sufficient, Defendants are not precluded from filing a motion to dismiss pursuant to Rule 12(b)(6). The Court's role at this stage is to perform a screening function. The Court's ruling does not prejudice Defendants from litigating the matter as they see fit.

deficiencies set forth herein. If Plaintiff does not submit an amended complaint curing these deficiencies within thirty days, the dismissal of those counts will then be with prejudice. A dismissal with prejudice means that Plaintiff will be precluded from filing the dismissed claims in the future against Defendants concerning the allegations in the complaint. An appropriate form of Order accompanies this Opinion.

Dated: September 7, 2017

JOHN MICHAEL VAZQUEZ, U.S.D.J.