**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GUILIO MESADIEU,

    *Plaintiff,*

v.

CITY OF ELIZABETH, et al,

    *Defendants.*

Civil Action No. 17-3252

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Plaintiff Guilio Mesadieu ("Plaintiff") filed an initial Complaint on May 5, 2017. D.E. 1. On September 7, 2017, the Court granted Plaintiff *in forma pauperis* status pursuant to 28 U.S.C. § 1915 but dismissed Counts I, II, III (as to alleged searches and the 2002 arrest only), IV, V, VI, VII, VIII, X, XI (as to the 2002 arrest only), and XII of the Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failing to state a claim upon which relief can be granted. D.E. 2, 3. The Court allowed Counts III and IX as to Plaintiff's 2001 and 2006 arrests to remain.[1] *Id.*

    Plaintiff filed his First Amended Complaint ("FAC") on October 20, 2017. D.E. 5.[2] Because Plaintiff is still proceeding *in forma pauperis*, the Court screens Plaintiff's FAC pursuant

---

[1] The Counts that survived the initial screening of the Complaint were for false arrest and unreasonable search and seizure (Count III) and false imprisonment (Count IX).

[2] Plaintiff is proceeding *pro se*, and, consequently, the Court construes Plaintiff's pleadings liberally and holds them to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As a result, the Court will treat D.E. 5 as Plaintiff's Amended Complaint.

to 28 U.S.C. § 1915(e)(2)(B). The Court now **DISMISSES** Counts I, II, III (as to alleged searches and the 2002 arrest only), IV, V, VI, VII, X, XI (as to the 2002 arrest only), and XII of the Complaint with prejudice for failure to state plausible claims for relief.

In the FAC, Plaintiff continues to seek the same relief from the allegations concerning the 2001 and 2006 arrests that the Court deemed plausibly pled in its prior screening decision. Opinion at 8-9; D.E. 2. The FAC also alleges new facts concerning a 2003 arrest and multiple encounters with the police that did not lead to arrest. Finally, the FAC alleges additional facts regarding Count VIII (assault) during the 2003 arrest. FAC at ¶¶ 60-61.[3] These additional allegations plausibly plead the elements of the common law tort of assault. Therefore, at this stage, Counts III and IX as to Plaintiff's 2001, 2003, and 2006 arrest, and Count VIII as to the 2003 arrest remain.[4]

## I. FACTS AND PROCEDURAL HISTORY

For the purposes of the pending motion, the Court need not retrace this case's full factual and procedural history. The Court's September 7, 2017 Opinion screening Plaintiff's Complaint, D.E. 2, includes a detailed recounting of the background of this matter. To the extent relevant to this motion, the Court incorporates the factual and procedural history into this Opinion.

Plaintiff, an African-American man, alleges that police officers from the Elizabeth City Police Department have targeted him on multiple occasions due to his race. Defendants are the

---

[3] The FAC's pagination skips page numbers. Therefore, the Court will cite to the PageID number listed on each page of the FAC.

[4] For the purposes of this screening pursuant to 28 U.S.C. § 1915(e)(2)(B) "the Court accepts as true all well-pleaded facts in the complaint." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Thus, taking the alleged facts in the light most favorable to Plaintiff, Plaintiff has sufficiently pled plausible causes of action in Counts III and IX as to Plaintiff's 2001, 2003, and 2006 arrests and Count VIII as to Plaintiff's 2003 arrest. However, the Court's ruling does not prevent Defendants from litigating this matter as they see fit, including filing a motion to dismiss pursuant to Rule 12(b)(6) if they deem it appropriate.

City of Elizabeth and individual Elizabeth police officers. In addition to the 2001, 2002, and 2006 arrests described in the Complaint, the FAC alleges details of a 2003 arrest. On July 9, 2003, Plaintiff claims he was biking away from his girlfriend's residence when a Toyota with tinted windows hit him. FAC at 60. Plaintiff fell to the ground and began to run. *Id.* Plaintiff realized that his pursuers were Elizabeth police officers and stopped running. *Id.* An officer immediately struck Plaintiff in the face with a service weapon, causing Plaintiff to fall to the ground. *Id.* The other officers then allegedly began stomping and punching Plaintiff, before handcuffing and spraying him with mace. *Id.* Despite Plaintiff's numerous alleged injuries, the officers brought Plaintiff to the Elizabeth Police Department precinct. *Id.* at 61. There, Plaintiff was charged with possession of a controlled dangerous substance ("CDS"), intent to distribute a CDS, obstructing the administration of law, and resisting arrest. *Id.* A jury found Plaintiff not guilty of possession or intent to distribute, but guilty of the obstruction and resisting arrest charges. *Id.*

The FAC also alleges several new "documented encounters" between Plaintiff and Defendants from the time of the 2003 arrest to the time of the 2006 arrest. The FAC describes these encounters as follows: August 13, 2005 (alleged violation of resisting order, dismissed); August 20, 2005 (alleged loitering, $183 fine); August 30, 2005 (alleged restraining order, dismissed); and September 17, 2006 (alleged wandering/prowling to obtain/sell CDs, dismissed). *Id.* Plaintiff further claims that these encounters, and others described in the original Complaint and FAC, made him become depressed and lose interest in school and other endeavors. *Id.* at 64.

As stated above, on September 7, 2017, after screening Plaintiff's Complaint, the Court dismissed Counts I, II, III (as to alleged searches and the 2002 arrest only), IV, V, VI, VII, VIII, X, XI (as to the 2002 arrest only), and XII of the Complaint without prejudice. As to those counts, the Court gave Plaintiff leave to file an Amended Complaint within thirty days addressing the

deficiencies noted in the Court's opinion if he so chose.[5] D.E. 2, 3. On October 20, 2017, Plaintiff filed the FAC. D.E. 5.

The causes of action and corresponding counts in the FAC are somewhat unclear. The Court construes the Amended Complaint to allege the following causes of action: racial profiling and discrimination in violation of the Fourteenth Amendment (Count I); racial discrimination in violation of the Equal Protection Clause (Count II); illegal search and seizure in violation of the Fourth and Fourteenth Amendments (Counts III, IV, and IX); denial of meaningful access to the courts in violation of the First Amendment (Count V); a civil rights conspiracy in violation of 42 U.S.C. § 1985(3) and neglecting to prevent a civil rights conspiracy in violation of 42 U.S.C. § 1986 (Counts V, VI); failure to adequately train and/or supervise (Count VII); "arresting and/or detaining Plaintiff based on race" in violation of "the tort of assault under the law of New Jersey" (Count VIII); wrongful imprisonment (IX); racial discrimination pursuant to New Jersey law (Count X); intentional infliction of emotional distress (Count XI); and negligence for failure to adequately train and/or supervise employees (Count XII). Based on these alleged violations, Plaintiff continues to seek compensatory and punitive damages, as well as an injunction stating that "Plaintiff was subjected to racial profiling," prohibiting defendants "from having any further contact with Plaintiff," and ordering Defendants "to disclose the full extent of their racial profiling practices to the Plaintiff and public at large." FAC at 57.

---

[5] On October 17, 2017, the Court gave Plaintiff an additional thirty days to file an Amended Complaint because the record was not clear as to whether Plaintiff, who is incarcerated, had received the Court's September 7, 2017 Opinion and Order. D.E. 4.

## II. LEGAL STANDARD

When allowing a plaintiff to proceed *in forma pauperis*, the Court must review the complaint and dismiss the action if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B). When considering dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted, the Court must apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 Fed. App'x 120, 122 (3d Cir. 2012). To state a claim that survives a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Plaintiff is proceeding *pro se*, the Court construes Plaintiff's Amended Complaint liberally and holds it to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

## III. LEGAL ANALYSIS

At the outset, the Court notes that it will not address potential defenses to the claims raised herein. In particular, it appears that Plaintiff's allegations concern incidents whose statute of limitations has run. *See, e.g., Rolax v. Whitman*, 175 F. Supp. 2d 720 (D.N.J. 2001), *aff'd*, 53 F. App'x 635 (3d Cir. 2002) ("Actions filed under § 1983 in New Jersey are subject to two-year

personal injury statute of limitations."); FAC at 58-64 (discussing allegations that occurred from 2001 to 2011). Although it has real concerns over the statute of limitations at issue here, the Court will not address the statute of limitations or any other potential, obvious defenses at this time. Defendants may raise them at the motion to dismiss stage if they so choose.

### A. Section 1983 Claims

Claims of constitutional violations must be brought pursuant to 42 U.S.C. § 1983. *See Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). In order to state claim under Section 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).[6]

#### 1. Racial Profiling (Count I)

In the original Complaint, Plaintiff alleged that Elizabeth police officers racially profiled him in violation of the Fourteenth Amendment. Plaintiff's only factual allegation in support of this claim was that Defendants Mikros, Kelly, and Gunter "racially profil[ed] Plaintiff, a racial minority," which "constituted selective enforcement of the law in violation of the Fourteenth [Amendment]." Compl. at 19.

---

[6] When a state official's actions give rise to a Section 1983 claim, qualified immunity can shield the officer from liability. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "The defendant has the burden of establishing qualified immunity." *Ihlenfeld v. Darby Borough Police Dep't*, No. 16-01990, 2017 WL 132169, at *6 (E.D.Pa. Jan. 13, 2017). The United State Supreme Court has found that the issue of qualified immunity turns on two questions: (1) whether plaintiff's alleged facts make out a violation of a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of defendant's alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because qualified immunity is an affirmative defense, the Court will not address whether Defendants are entitled to qualified immunity at this stage, but nothing in this Opinion precludes Defendants from raising the issue in a later motion.

In screening the claim, the Court noted that "[a] claim for racial profiling is typically advanced under two theories: a claim for selective enforcement . . . or a claim for an equal protection violation." Opinion at 7; D.E. 2 (citing *Mitchell v. Twp. Of Pemberton*, No. 09-810, 2010 WL 2540466, at *5 (D.N.J. June 17, 2010)). Further, the Court stated that under either of the two theories, the mere use of the conclusory term "racial profiling" in a complaint is not sufficient to demonstrate that such a policy, in fact, existed. *Id.* Therefore, the Court found that Plaintiff's general allegation of "racial profiling" in the Complaint was insufficient to plausibly plead a Fourteenth Amendment violation.

The FAC clarifies that Plaintiff seeks to bring his claim of racial profiling based on a selective enforcement theory. FAC at 70. The FAC alleges that Officer Mikros made several racist remarks to Plaintiff while arresting him. First, while effectuating the 2006 arrest, the FAC alleges that Officer Mikros slammed Plaintiff onto a car and "screamed in [his] ear, 'stay down stinking Haitian.'" FAC at 63. Second, during another arrest occurring in 2011, Officer Mikros allegedly asked Plaintiff, "[w]hy won't you just move to another state, if you're not going to leave this country[?]" *Id.* at 64. The Court notes that neither comment, even if true, necessarily indicates an African-American animus. One comment concerned Plaintiff's country of origin (Haiti) and the other a perceived immigration status. Nevertheless, for purposes of screening and because Plaintiff is proceeding *pro se*, the Court interprets the comments to be based on Plaintiff's race.

"To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Dique v. New Jersey State Police*, 603 F.3d

181, 184 fn. 5 (3d Cir. 2010) (internal quotation marks omitted) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).

Even taking the additional allegations as true, the FAC fails to plausibly plead a claim of selective-enforcement. Plaintiff has not sufficiently alleged that he was treated differently from similarly situated individuals. Plaintiff attempts to make this showing by attaching, and citing to, a report published by the American Civil Liberties Union (the "Report"): "Selective Policing: Racially Disparate Enforcement of Low-Level Offenses in New Jersey." FAC at 67. The Report suggests that on average African Americans are 3.6 times more likely than Caucasians to be arrested by the Elizabeth Police Department for trespass, marijuana possession, disorderly conduct, and loitering. Pl. Opp., Ex. 3 at 38; D.E. 5-3. While Plaintiff alleges that on August 20, 2005, Elizabeth City police officers fined him for loitering, all of Plaintiff's other alleged arrests stem from charges that were not analyzed in the Report, for example possession and intent to distribute. Thus, the Report does not appear relevant to Plaintiff's particular arrests save one. Therefore, the Report's data is insufficient to show Plaintiff's collective arrests stemmed from the officers treating him differently from other similarly situated defendants. The Court dismisses Count I with prejudice.

### 2. Racial Discrimination (Count II)

The FAC also re-alleges that Defendants Mikros, Kelly, and Gunter discriminated against Plaintiff "based on considerations of race," which "denied him equal protection of the laws" in violation of the Equal Protection Clause. FAC at 22. In screening the Complaint, the Court noted that Plaintiff only made a conclusory allegation that he was treated differently because of his race. Opinion at 8; D.E. 2.

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. To establish an equal protection claim, plaintiff must show that the defendants' actions: "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). "To prove discriminatory effect, plaintiff must show that [he] is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." *Id.* To prove discriminatory purpose, a plaintiff must show that "the decisionmaker…selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Laguda v. City of Rahyway*, 2016 WL 1029789 at *8-9 (D. N.J. 2016) (citing *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)) (internal citations omitted).

Here, the FAC fails to plausibly plead a claim of racial profiling. The FAC does not allege facts to make out the first prong of discriminatory effect. For the same reasons discussed above, the FAC fails to establish that Plaintiff was treated differently from similarly situated individuals in an unprotected class. Here, too, the facts that Plaintiff is African-American and was arrested on multiple occasions by Elizabeth City police officers are insufficient, standing alone, to show discriminatory effect. Plaintiff attempts to bolster these facts with the Report's statistics, but, again, the Report addresses specific low-level offenses that differ from the vast majority of offenses for which Plaintiff was arrested. Count II is dismissed with prejudice.

## B. Fourth Amendment (Counts III and IX)[7]

In addition to the 2001 and 2006 arrests discussed in the original Complaint, Plaintiff alleges that his 2003 arrest was "based on race" and that Defendants had no probable cause to arrest him. FAC at 70.

"The Fourth Amendment, which protects persons from 'unreasonable searches and seizures' prohibits false arrest, false imprisonment, illegal search and seizure, and the use of excessive force." *Roman v. City of Newark*, No. 16-1110, 2017 WL 436251, at *3 (D.N.J. Jan. 31, 2017) (quoting U.S. Const. amend. IV). To state a claim for false arrest, a plaintiff must allege "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *Watson v. Doe*, No. 04-962, 2005 WL 1116239, at *3 (D.N.J. May 10, 2005). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992). "[T]he test for an arrest without probable cause is an objective one, based on 'the facts available to the officers at the moment of arrest.'" *Janowski v. City of N. Wildwood*, No. 16-4464, 2017 WL 1821078, at *6 (D.N.J. May 5, 2017) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

Taking Plaintiff's allegations as true, Defendants did not have probable cause to arrest Plaintiff in 2003. In 2003, Plaintiff alleges that he did not have any drugs on his person and that

---

[7] As it did in its screening Opinion, the Court construes Count IX for "wrongful imprisonment" to be a claim for false imprisonment under New Jersey law. "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato,* 549 U.S. 384 (2007); *see also Newman v. Barrett Twp.*, No. 15-00376, 2015 WL 7755672, at *3 (M.D. Pa. Dec. 2, 2015) ("False arrest and false imprisonment are essentially the same claim."). Additionally, the elements for false imprisonment under New Jersey and federal law are the same. *Geissler v. City of Atl. City*, 198 F. Supp. 3d 389, 397 (D.N.J. 2016). Therefore, the same analysis applies to Count IX and the false arrest claims in Count III.

he was later acquitted of the possession and intent to distribute charges. Thus, Plaintiff plausibly pleads a lack of probable cause. Therefore Counts III and IX remain as to the 2003 arrest.[8]

### C. Assault

In the Complaint, Plaintiff alleged a common law tort of assault claim against City of Elizabeth police officers. Specifically, Plaintiff alleged that Defendants Mikros, Kelly, and Gunter committed assault by "detaining and/or arresting Plaintiff based on race." Compl. at 21. In screening the assault claim, the Court noted that "[a] person is subject to liability for the common law tort of assault if: (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such immediate apprehension." Opinion at 15, D.E. 2 (citing *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009)). The Court found that the claim was not plausibly pled.

The FAC contains new factual allegations to support a claim of assault for Plaintiff's 2003 arrest. Plaintiff claims that, on July 9, 2003, Defendant Officers hit Plaintiff with their car while he was riding his bicycle home from his girlfriend's residence. FAC at 60. Plaintiff claims he fell to the ground, and immediately began running out of fear that the assailants were "coming to kill or cause more harm to him." *Id.* After realizing that the assailants were police officers, Plaintiff stopped running, and "before [he could] get a word out of his mouth[,]" the officers struck him with a service weapon, causing him to fall to the ground. *Id.* The officers allegedly continued assaulting Plaintiff while he was on the ground before handcuffing him. *Id.* Plaintiff claims that,

---

[8] To be clear, the Court is not finding that Defendants did in fact lack probable cause. Instead, the Court is merely ruling that Plaintiff has sufficiently pled a lack of probable cause. Defendants may raise any arguments, such as statute of limitations, if they so choose. The Opinion also does not prevent Defendants from filing a motion to dismiss for failing to plausibly plead a claim. The Court is conducting a screening function without prejudice to the rights of Defendants to defend the matter as they see fit.

after he was handcuffed, the officers proceeded to mace him. *Id.* Plaintiff alleges that the incident left him with "multiple open wounds on his legs, knees, arms, head…bruised ribs and [a bruised] back." FAC at 61. These new allegations, accepted as true at this stage, show harmful conduct and immediate apprehension. Plaintiff alleges that he feared for his life, and his fleeing reflects the fear. Further, being struck repeatedly with an object that left multiple wounds and bruises clearly meets the definition of harmful contact. Therefore, Count VIII remains as to Plaintiff's 2003 arrest.

### D. Intentional Infliction of Emotional Distress

Finally, in the Complaint, Plaintiff alleged a claim of intentional infliction of emotional distress ("IED") against the Elizabeth City police officers. The Complaint alleged only that Defendants "purposely subject[ed] Plaintiff to severe emotional distress." Compl. at 21. In its screening Opinion, the Court noted that to establish an IED cause of action a plaintiff must plead four elements: (1) defendants acted intentionally or recklessly; (2) defendants' conduct was so outrageous to go beyond all bounds of decency and be utterly intolerable in a civilized community; (3) proximate cause; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it. Opinion at 16, D.E. 2 (citing *Shuman v. Raritan Twp.*, No. 14-3658, 2016 WL 7-13465, at *26 (D.N.J. Nov. 30, 2016) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 532 (D.N.J. 2008)). Because Plaintiff's allegations were entirely conclusory and did not plead any of the requisite elements for the tort of IED, the Court dismissed the claim without prejudice.

The FAC similarly fails to satisfy the requisite elements for an IED claim. Plaintiff now alleges that, after being released from prison, Officer Mikros and the other Defendant Officers continued to harass him by waiting around his home to "unlawfully search and arrest Plaintiff." FAC at 64. Plaintiff claims that this constant harassment caused him to "become even more

depressed." *Id.* He alleges that Defendants' conduct caused him to lose interest in school, "his life endeavors," and that he "was constantly living in fear of Defendants." *Id.* While Plaintiff's additional factual allegations come closer to alleging an IED claim, they are insufficient to plausibly allege either the second or fourth elements of an IED claim. The FAC's allegations concerning arrests that appear to have, on multiple occasions, led to convictions and confinement, do not show that the Defendant officers' "conduct was so outrageous to go beyond all bounds of decency and be utterly intolerable in a civilized community." Further, while Plaintiff alleges that he grew depressed, these allegations do not appear so severe that no reasonable person could be expected to endure it. Count XI is dismissed with prejudice.

### E. Remaining Counts

The FAC does not offer new factual allegations warranting a second analysis towards the remaining counts. For example, in the FAC Plaintiff re-alleges that Defendants illegally searched him in violation of his Fourth Amendment rights during his 2006 arrest. The FAC only adds one additional allegation to strengthen this argument. It alleges that Officer Mikros "violently slamm[ed] Plaintiff" onto the trunk of Plaintiff's friend's car and screamed into his ear "'stay down stinking Haitian.'" FAC at 63. While such behavior, if true, is abhorrent, it does not change the Court's original analysis that Plaintiff's claim is not plausibly pled.

As the Court explained in its first screening Opinion, Fourth Amendment rights may not be vicariously asserted. *See Alderman v. United States*, 394 U.S. 165, 174 (1969). Therefore, since Plaintiff asserts no ownership over the vehicle in question, he has no Fourth Amendment rights as to the search of the vehicle. *See U. S. ex rel. Mann v. Mazurkiewicz*, 316 F. Supp. 1041, 1044 (E.D.Pa. 1970). As to the search of his person, the FAC still does not provide enough detail or factual support for this Court to evaluate whether the search was incident to a lawful arrest.

For a second example, the FAC re-alleges the same facts regarding the "withholding of exculpatory evidence" that Plaintiff claimed in his Complaint. Plaintiff, again, asserts that "[t]he withholding of exculpatory evidence by the Defendants from the public…prevent[ed] Plaintiff from mounting a substantial legal defense and denied Plaintiff's right of access to the court." FAC at 71. These statements are merely conclusory statements, and once again, they do not plausibly plead a violation of Plaintiff's First Amendment rights.

When dismissing a case brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, which affords a plaintiff with leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). At this point, the Court finds that further amendment of the dismissed claims would be futile. In its prior Opinion, the Court explained the deficiencies in Plaintiff's claims, permitted Plaintiff to amend his Complaint to address the deficiencies, and then extended Plaintiff's time to file the amended pleading. The FAC, does not sufficiently address the noted shortcomings, so the Court is dismissing the implausibly pled claims with prejudice. A dismissal with prejudice means that Plaintiff will be precluded from filing any future suit against Defendant concerning the allegations in the complaint.

## IV. CONCLUSION

Plaintiff's Amended Complaint, therefore, is **DISMISSED with prejudice** as to Counts I, II, III (as to alleged searches and the 2002 arrest only), IV, V, VI, VII, X, XI (as to the 2002 arrest only), and XII. Counts III and IX remain as to Plaintiff's 2001, 2003, and 2006 arrests. Count VIII remains as to Plaintiff's 2003 arrest. An appropriate Order accompanies this Opinion.

Dated: April 2, 2018

                                                John Michael Vazquez, U.S.D.J.